IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-120-D

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JAYSON MCNEIL, | ) |
| | ) |
| Defendant. | ) |

On January 24, 2022, Jayson McNeil ("McNeil" or "defendant"), through counsel, moved

for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b),

132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 179]. On March

9, 2022, the United States responded in opposition [D.E. 184] and filed documents in support [D.E.

185]. As explained below, the court denies McNeil's motion.

I.

On January 28, 2020, a jury convicted McNeil of distributing a quantity of fentanyl and

heroin resulting in death (count one), conspiracy to distribute and possess with intent to distribute

one kilogram or more of heroin (count two), possession with the intent to distribute a quantity of

heroin (count three), and being a felon in possession of firearm (count four). See [D.E. 110, 153].

On April 29, 2020, the court held McNeil's sentencing hearing. See [D.E. 132, 137, 154]. At the

hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR") and

resolved McNeil's objections to the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 128];

Sent. Tr. [D.E. 154] 4–10. The court calculated McNeil's total offense level to be 43, his criminal

history category to be VI, and his advisory guideline range to be life imprisonment. See Sent. Tr.

at 10. McNeil also was subject to a mandatory life sentence on count one. See id. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced McNeil to concurrent life imprisonment terms on counts one and two, 360 months' concurrent imprisonment on count three, and 120 months' concurrent imprisonment on count four, for a total sentence of "the rest of [McNeil's] natural life." Id. at 44; see id. at 10–44. McNeil appealed [D.E. 133]. On January 13, 2022, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment. See United States v. McNeil, No. 20-4289, 2022 WL 130983 (4th Cir. Jan. 13, 2022) (per curiam) (unpublished); cert. denied, No. 21-7585 (U.S. May 16, 2022).

## II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

2

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

         (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v.

> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "§ 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for exhaustion, McNeil applied to the warden for compassionate release, and the warden denied the application. See [D.E. 179] 3–4. The government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). Thus, the court addresses the merits.

McNeil seeks compassionate release pursuant to section 3582(c)(1)(A). In support, McNeil cites the COVID-19 pandemic, his obesity, his hypertension, his history of smoking, and not receiving his second COVID-19 vaccination. See [D.E. 179] 5–8.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

5

Although McNeil states that he suffers from hypertension and obesity and that he used to smoke, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while McNeil serves his sentence. McNeil also argues that these conditions place him at heightened risk of serious infection from COVID-19 and makes arguments about the spread of COVID-19 within BOP facilities. See [D.E. 179] 6–7.

McNeil has received two doses of a COVID-19 vaccine,[2] which greatly diminishes his risk of serious infection from COVID-19, even in light of his medical conditions. See [D.E. 185] 6–9; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) ("[V]accination does not rule out reinfection, but this does not diminish that vaccination mitigates the risk of COVID-19 complications . . . ."); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability

---

[2] In his motion, McNeil argued he was not fully vaccinated because he had received only one vaccine dose. See [D.E. 179] 7. McNeil, however, refused the second vaccine dose offered to him on March 2, 2021. See [D.E. 185] 6, 8. On August, 25, 2021, McNeil received his second Pfizer vaccine dose and is now fully vaccinated. See id. at 6–9.

6

of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, reducing McNeil's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and McNeil's medical conditions are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, McNeil's vaccinated status greatly diminishes the risk to McNeil from COVID-19. See, e.g., Jacques, 2022 WL 894695, at *2; Scalea, 2022 WL 795425, at *1; Shettler, 2022 WL 620311, at *4; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Moreover, and in any event, the section 3553(a) factors counsel against reducing McNeil's sentence. See Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

McNeil is 31 years old and engaged in serious criminal conduct beginning in 2002 at age 11 and continuing through age 28. See Sent. Tr. [D.E. 154] 15–17, 40–41; PSR ¶¶ 36–43. In this case, McNeil distributed a quantity of fentanyl and heroin resulting in death, conspired to distribute and

7

possess with intent to distribute one kilogram or more of heroin, possessed with the intent to distribute a quantity of heroin, and possessed a firearm as a felon. See [D.E. 110, 153]; see PSR ¶¶ 16–34. In the course of his heroin distribution, McNeil threatened violence and pointed a gun at an individual who owed him money. See PSR ¶¶ 29–30, 83. McNeil also was a manager or a supervisor in the drug trafficking operation. See id. ¶ 86; Sent. Tr. [D.E. 154] 8–9. Sadly, McNeil's latest criminal conduct is nothing new. McNeil is a violent recidivist with juvenile convictions for attempted common law robbery, simple assault, trespassing, discharging a firearm within city limits, and communicating threats, and adult convictions for possession of drug paraphernalia, common law robbery, assault with a deadly weapon, altering/removing a serial number, possession with intent to manufacture, sell, or deliver cocaine, possession with intent to manufacture, sell, or deliver a schedule II controlled substance, maintaining a vehicle, dwelling, or place for a controlled substance, distribution of cocaine base (crack), being a felon in possession of a firearm, and larceny by trick. See PSR ¶¶ 36–44. McNeil has performed poorly on supervision and has a spotty work history. See id. ¶¶ 36, 43, 67–72.

The court has considered McNeil's exposure to COVID-19, his medical conditions, his turbulent childhood, his mental health, his supportive family, his serious criminal conduct, and his terrible criminal history. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, McNeil's arguments, the government's persuasive response, the need to punish McNeil for his serious criminal behavior, to incapacitate McNeil, to promote respect for the law, to deter others, and to protect society, the court denies McNeil's motion for compassionate release. See, e.g., Chavez-Meza v.

8

United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

## III.

In sum, the court DENIES McNeil's motion for compassionate release [D.E. 179].

SO ORDERED. This 16 day of May, 2022.

James Dever

JAMES C. DEVER III
United States District Judge